IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUG CUTCHER,
   *Plaintiff*,

v.

MIDLAND FUNDING, LLC, *et al.*,
   *Defendants*.

Civil Action No. ELH-13-3733

**MEMORANDUM OPINION**

Doug Cutcher, plaintiff, filed suit on December 11, 2013, raising two claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), against three defendants: Midland Funding, LLC ("Midland Funding"); Midland Credit Management, Inc. ("Midland Credit"); and Encore Capital Group, Inc. ("Encore"). *See* Complaint (ECF 1, "Compl."). Defendants have filed a Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction (ECF 6) and a supporting memorandum (ECF 6-1, "Mem.") (collectively, the "Motion"). In the Motion, defendants aver that they are incorporated and maintain their principal places of business in California, and seek dismissal, pursuant to Fed. R. Civ. P. 12(b)(2), based on a lack of personal jurisdiction. *See* ECF 6; Mem. at 1-2. Plaintiff opposes the Motion (ECF 7) and requests, as an alternative to dismissal, that the case be transferred to the United States District Court for the Southern District of California. ECF 7-1 ("Opposition" or "Opp.") at 6-7; *accord* ECF 7 at 1. Defendants have replied (ECF 8, "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will transfer the case to the United States District Court for the Southern District of California.

## I.  Factual Background[1]

Cutcher is a resident of Milton, Florida, and is a "consumer" as defined under the FDCPA, 15 U.S.C. § 1692a(3).  Compl. ¶ 5.  Defendants are entities "specializing in debt collection" and are "debt collector(s)" as defined under the FDCPA, 15 U.S.C. § 1692a(6).  *Id.* ¶¶ 6-9.  Each defendant maintains "a business address of 400 E. Pratt St., 8th Fl., Baltimore, MD 21203."  *Id.* ¶¶ 7-9.  The Complaint does not identify the place of incorporation or the principal place of business of any of the three defendants.

According to plaintiff, the three defendants, "acting in concert," had "repeatedly contacted [him] in an attempt to collect" a consumer debt, which "related to a HSBC credit card."  *Id.*  ¶¶ 10, 12.  In particular, defendants' "collectors placed repeated harassing telephone calls to Plaintiff's home telephone" during December 2012 and January 2013, allegedly calling plaintiff "at least two (2) times per day, more than ten (10) times per week, and on weekends with an intent to harass Plaintiff."  *Id.*  ¶¶ 15, 17.  The "calls originated from numbers, including but not limited to, (800) 265-8825," which belongs to Midland Credit, as well as "from restricted and private numbers."  *Id.*  ¶ 16.  Despite plaintiff's requests that defendants stop calling him, defendants continued "to harass, abuse and coerce Plaintiff into paying an alleged debt."  *Id.* ¶¶ 18-19.

## II.  Fed. R. Civ. P. 12(b)(2) Standard

A motion to dismiss for lack of personal jurisdiction arises under Fed. R. Civ. P. 12(b)(2).  "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs*

---

[1] This background is drawn from the Complaint.  For purposes of the Motion, the Court must view all disputed facts and draw all reasonable inferences in plaintiff's favor.  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

*v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2).  *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274-313 (3d ed. 2004, 2012 Supp.).  Rather, a district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint.  *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).[2]  In that circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Notably, however, "district courts are not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).  In any event, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

Alternatively, the court may, in its discretion, permit limited discovery as to the jurisdictional issue.  *See Mylan Laboratories*, 2 F.3d at 64.  Then, "the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676.  Plaintiff has not requested jurisdictional discovery, however.

---

[2] Neither side submitted affidavits in connection with their briefing of the Motion.

### III.  Discussion

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located.  *Carefirst of Maryland*, 334 F.3d at 396.  Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol.), § 6-103(b) of the Courts & Judicial Proceedings Article.  It authorizes "personal jurisdiction over a person, who directly or by an agent":

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id*.

Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution."  *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)).  "Because the limits of Maryland's statutory authorization for the exercise of personal

jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The United States Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). The difference between the two turns on the nature and extent of the contacts with the forum state that are necessary to meet the "minimum contacts" threshold. The Fourth Circuit has explained:

> General personal jurisdiction, on the one hand, requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)) (internal citations omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011) ("*Goodyear*") (explaining that a court may exercise general jurisdiction to hear "any and all claims" against a corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," whereas specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy'" (citations omitted) (alteration in original)).

To determine whether the due process requirements for asserting specific jurisdiction have been met, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citing *ALS Scan*, 293 F.3d at 715); *see also Carefirst of Maryland*, 334 F.3d at 397.

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Engineers*, 561 F.3d at 278. "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (internal citations omitted); *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012). To satisfy the second prong of the test for specific jurisdiction, the defendant's contacts with the forum state must form the basis of the suit. *Consulting Engineers*, 561 F.3d at 278-79. The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional." *Burger King*, 471 U.S. at 477. "This prong of the analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th

Cir. 2012) (citing *CFA Inst.*, 551 F.3d at 296) (internal quotation marks omitted), *cert. denied*, ____ U.S. ____, 133 S. Ct. 846 (2013).

In contrast, "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at 715 (internal quotation marks omitted); *accord Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). Indeed, the Fourth Circuit has long held that "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

Recently, in *Daimler AG v. Bauman*, ____ U.S. ____, 134 S. Ct. 746 (2014), Justice Ginsburg—writing for eight justices—surveyed the Supreme Court's post-*International Shoe* jurisprudence concerning general jurisdiction and, in so doing, clarified the applicable standard.[3] Unlike with specific jurisdiction, which underwent a "rapid expansion" in the wake of *International Shoe*, the Supreme Court has "declined to stretch general jurisdiction beyond limits traditionally recognized," such that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Id.* at 755, 757-58 (footnote omitted).

As the *Daimler* Court made clear, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. In particular: "[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (alteration in original).[4] "'For an

---

[3] Justice Sotomayor concurred only in the judgment. *See Daimler*, 134 S. Ct. at 763.

[4] In *Goodyear*, 131 S. Ct. at 2851, the Supreme Court indicated that the discussion of "foreign" corporations pertains to both "sister-state" and "foreign-country" entities.

individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id.* (quoting *Goodyear*, 131 S. Ct. at 2853-54) (internal citation omitted) (alterations in original); *see also Estate of Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 2d 514, 517-18 (D. Md. 2003) ("[G]eneral jurisdiction is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered 'essentially domiciled' within that state." (quoting *Atlantech Distribution, Inc. v. Credit Gen. Ins. Co.*, 30 F. Supp. 2d 534, 536 (D. Md. 1998)).

The *Daimler* Court declined to "foreclose the possibility that in an exceptional case," such as the circumstances presented in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." 134 S. Ct. at 761 n.19. According to the Supreme Court, *Perkins* "'remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Id.* at 755-56 (quoting *Goodyear*, 131 S. Ct. at 2856). As to when an "exceptional" case might arise, the *Daimler* Court's characterization of its holding in *Perkins* is illustrative, 134 S. Ct. at 756:

> The defendant in *Perkins*, Benguet, was a company incorporated under the laws of the Philippines, where it operated gold and silver mines. Benguet ceased its mining operations during the Japanese occupation of the Philippines in World War II; its president moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities. [*Perkins*, 342 U.S. at 448.] The plaintiff, an Ohio resident, sued Benguet on a claim that neither arose in Ohio nor related to the corporation's activities in that State. We held that the Ohio courts could exercise general jurisdiction over Benguet without offending due process. *Ibid.* That was so, we later noted, because "Ohio was the

corporation's principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n.11[] (1984).

Under the standard for general jurisdiction articulated by the *Daimler* Court, 134 S. Ct. at 762 n.20, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." The place of incorporation and the principal place of business "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 760. A plaintiff therefore will have "recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* In contrast, the *Daimler* Court expressly rejected the contention that general jurisdiction is appropriate "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" characterizing that formulation as "unacceptably grasping." *Id.* at 760-61 (quoting respondents' brief). "Such exorbitant exercises of all-purpose jurisdiction," the Court said, "would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-62 (quoting *Burger King*, 471 U.S. at 472) (further internal quotation marks omitted).

According to defendants, it is "readily apparent" from the Complaint that this Court is an improper forum for this case. Mem. at 1. They observe that, rather than filing suit in Florida, where Cutcher resides, or in California, where defendants are incorporated and maintain their principal places of business, plaintiff brought this action in Maryland. *See id.* at 1-2. Yet, defendants posit that plaintiff has pleaded no nexus between this case and Maryland, beyond his claim that defendants "'conduct business'" from a Baltimore address. Therefore, they insist that dismissal for lack of personal jurisdiction is warranted. *See id.*

Turning first to the issue of specific jurisdiction, defendants argue that plaintiff "alleges no factual nexus" linking their actions regarding plaintiff's debt obligation and the forum state.

Mem. at 1. Defendants' "harassing telephone calls" were, according to plaintiff, placed to his home in Florida. But, plaintiff does not indicate where defendants' "operation centers" are located, much less that one is located in Maryland. Moreover, plaintiff does not allege that any call about which he complains originated from a Maryland location. To the contrary, in his Opposition, plaintiff admits: "At this time, it is unclear if specific jurisdiction exists because it is unclear which of the Defendants' operation centers initiated the contacts complained of in Plaintiff's Complaint." Opp. at 4. According to defendants, the Complaint "clearly evidences that none of the events giving rise to Plaintiff's claims occurred or were otherwise remotely connected to Maryland," and plaintiff "has effectively conceded that the court lacks specific jurisdiction over Defendants." Mem. at 3. Therefore, they suggest that the only issue is whether the Court "may exercise general jurisdiction over Defendants." *Id*.

As noted, plaintiff does not allege that the calls at issue originated from Maryland. Nor does plaintiff seek jurisdictional discovery regarding either the origin of the calls at issue or the location of defendants' operational centers. In effect, Cutcher has abandoned any claim that this Court has specific jurisdiction over defendants. In any event, to the extent plaintiff has not abandoned that claim, he has plainly failed to make a prima facie showing that he has established specific jurisdiction in Maryland.

Rather than arguing that specific jurisdiction exists, plaintiff invokes the general jurisdiction of this Court. In particular, plaintiff insists: "Defendants' continuous and systematic activities in the State of Maryland are more than sufficient for the Court to exercise general jurisdiction." Opp. at 4. Notably, as the Supreme Court made clear in *Daimler*, in the context of general jurisdiction, the question is not whether an entity's "in-forum contacts can be said to be in some sense 'continuous and systematic'"; rather, the question is whether those contacts with

the forum "'are so "continuous and systematic" as to render [the entity] essentially at home in the forum State.'" 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851).

In support of the claim that general jurisdiction exists, plaintiff asserts: (1) "it is undisputed that Defendants maintain a place of business at 400 E. Pratt St., 8th Fl., Baltimore, MD 21203"; (2) defendants have Maryland employees; (3) "Midland Funding, LLC, and Midland Credit Management, Inc., maintain active collection agency licenses with the State of Maryland"[5]; and (4) "Midland Funding, LLC, and Midland Credit Management, Inc., have participated in litigation over 2000 times in both U.S. Court for the District of Maryland and the U.S. Bankruptcy Court for the District of Maryland."[6] *See* Opp. at 2-3, 6. However, plaintiff has failed to establish how any of those considerations provide for general jurisdiction over defendants in Maryland.

Regarding the first two aspects, *Lewis v. Park Plus, Inc.*, 2013 WL 6713224 (D. Md. Dec. 18, 2013), is instructive. The plaintiff, a Maryland citizen, filed suit in Maryland against a defendant incorporated in Delaware and with a principal place of business in New Jersey. *Id.* at *1. The suit arose from a workplace accident that occurred in Virginia, and which resulted in the death of the plaintiff's husband. *See id.* As in the case at bar, the plaintiff did not argue that specific jurisdiction existed, and instead maintained that the Maryland court had general jurisdiction over the defendant. *See id.* at *2. Despite "evidence that Defendant installed and

---

[5] Plaintiff attached to the Opposition copies of license information of Midland Funding and Midland Credit maintained by the State of Maryland Department of Labor, Licensing and Regulation. *See* ECF 7-2. He does not present similar licensing material with respect to the third defendant, Encore.

[6] Plaintiff also attached to the Opposition a list of cases in the United States District Court for the District of Maryland and the United States Bankruptcy Court for the District of Maryland, in which Midland Funding or Midland Credit are parties. *See* ECF 7-3. Notably, Midland Funding and Midland Credit are virtually always either defendants or creditors in the suits listed. Plaintiff raises no such allegations with respect to Encore, which, according to defendants, has never initiated any litigation in either state or federal court in Maryland. *See* Reply at 2 n.2.

operates a large parking facility" in Towson, Maryland, and may have had several Maryland employees, the district court observed that the plaintiff's "allegations and evidence do not indicate that this putative [Maryland] office was Defendant's headquarters or principal place of business." *Id.* at *4. Nor did plaintiff's allegations establish that the Maryland location "constitutes a substantial part of Defendant's overall operations." *Id.* In the district judge's view, a defendant could not "'reasonably anticipate being haled into court'" in Maryland based on conduct that had not been shown to be related to the defendant's activities in Maryland. *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The *Lewis* Court thus concluded that "exercising general jurisdiction over Defendant threatens to subject corporations to personal jurisdiction wherever they do business for activity unrelated to their purpose for doing business there. This outcome would not comport with traditional notions of fair play and substantial justice and would place an undue burden on businesses." *Id.* (citation omitted).

Cutcher has merely alleged that defendants, each of which undisputedly is incorporated in California and has its principal place of business there, "conduct business" in Maryland and maintain an address in Baltimore. However, he supplies no further allegations regarding the scope of defendants' activities in Maryland, much less any allegation suggesting that defendants are "essentially domiciled" in this state. *See Atlantech Distribution, Inc.*, 30 F. Supp. 2d at 536. And, he does not request jurisdictional discovery regarding the nature of defendants' presence or activities in Maryland. Here, as in *Lewis*, plaintiff "has failed to make a prima facie showing that Defendant[s'] contacts with Maryland are sufficiently continuous and systematic such that Defendant[s are] *essentially at home in Maryland*." *Lewis*, 2013 WL 6713224, at *4 (emphasis added).

Nor are plaintiff's other arguments persuasive as to the issue of general jurisdiction. Plaintiff insists that maintenance of "active collection agency licenses" in Maryland by Midland Funding and Midland Credit supports a finding of general jurisdiction as to them. Defendants counter that Midland Funding and Midland Credit "maintain debt collection licenses in each of the states requiring such licensure . . . ." Reply at 2. Plaintiff cites no authority in connection with his jurisdictional contention. Moreover, his argument is wholly inapplicable to Encore.

Plaintiff also argues that general jurisdiction is proper on the ground that Midland Funding and Midland Credit have participated in federal and state court litigation in Maryland. Opp. at 2-3, 6. Again, this argument has no bearing on jurisdiction as to Encore. And, as with his licensing argument, plaintiff cites no authority establishing the relevance of defendants' other litigation in the State of Maryland. Rather, he merely asserts, in conclusory terms: "Defendants have availed themselves of the laws of Maryland . . . by availing themselves of use of the Court System in the State in thousands of cases." *Id.* at 6.[7] In my view, plaintiff's allegations fall well short of a prima facie showing that this Court has general jurisdiction over claims against these defendants.

The only remaining question is whether the Complaint should be dismissed or, instead, transferred to a more appropriate forum. In the Opposition, plaintiff requests a transfer to the

---

[7] *See* Note 6, *supra*. With respect to federal cases in Maryland involving Midland Funding and Midland Credit, plaintiff has not shown that any federal court found *general* jurisdiction over them. Moreover, even where a case involving Midland Funding or Midland Credit has proceeded in Maryland, that fact alone does not necessarily indicate that specific or general jurisdiction existed; a litigant may waive objections based on personal jurisdiction. *See, e.g.*, *Structural Preservation Systems, LLC v. Andrews*, 931 F. Supp. 2d 667, 671 (D. Md. 2013) ("'[F]orum selection clauses permit parties to an agreement, in essence, to contract around principles of personal jurisdiction by consenting to resolve their disputes in specified tribunals.'") (citation omitted); *Micro Focus (US), Inc. v. Bell Canada*, 686 F. Supp. 2d 564, 566 (D. Md. 2010) ("The Supreme Court has 'noted that, because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.'") (quoting *Burger King*, *supra*, 471 U.S. at 472 n.14).

United States District Court for the Southern District of California if this Court determines that it lacks personal jurisdiction over defendants.  Opp. at 7.  Plaintiff explains: "Dismissal would leave [him] without any other avenue to obtain an assessment of his claims, as the statute of limitations has expired and re-filing the claims are, therefore, barred." *Id.* at 6.

Where personal jurisdiction is found to be absent, a district court retains discretion to transfer a case to an appropriate jurisdiction.  In particular, 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  *See also, e.g.*, *Saudi*, *supra*, 427 F.3d at 277 ("Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum."); *accord In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002).[8]

Notably, defendants concede: "Plaintiff clearly could have filed his lawsuit in Florida, where he resides, or in California, where Defendants are incorporated and maintain their principal places of business."  Mem. at 1.   And, in the Reply, defendants do not object to plaintiff's request for a transfer, as an alternative to dismissal.  Because the parties apparently agree that this case could have been brought in California, and because defendants raise no

---

[8] In connection with his request for a transfer, plaintiff cites 28 U.S.C. § 1404(a).  Opp. at 6.  Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Although Section 1404(a) constitutes a potential ground for transferring this case from the District of Maryland to another jurisdiction, it appears that plaintiff intended to rely on 28 U.S.C. § 1406(a), which is also cited.  *See* Opp. at 6 (citing Section 1406(a) in a parenthetical explanation pertaining to *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)).   Indeed, another case plaintiff references, *Porter v. Groat*, 840 F.2d 255 (1988), also involves a transfer pursuant to Section 1406(a); no case that plaintiff cites in connection with his transfer request discusses 28 U.S.C. § 1404(a).  *See* Opp. at 6.  Because I conclude that a transfer pursuant to Section 1406(a) is warranted, I need not decide whether a Section 1404(a) transfer would be proper.

opposition to plaintiff's request for a transfer if personal jurisdiction is found to be lacking, I am persuaded that a transfer to the United States District Court for the Southern District of California is appropriate.

### IV.  Conclusion

For the foregoing reasons, defendants' Motion (ECF 6) is denied, and plaintiff's request to transfer (ECF 7) is granted.  A separate Order follows, consistent with this Memorandum Opinion.

Date:  May 19, 2014                         _____/s/_____
                                            Ellen Lipton Hollander
                                            United States District Judge